997 So.2d 1254 (2009)
Richard B. RICHARDSON, Individually, Appellant,
v.
William P. WEATHERFORD, et al., Appellee.
No. 5D08-546.
District Court of Appeal of Florida, Fifth District.
January 2, 2009.
William G. Osborne and Christopher R. Turner of William G. Osborne, P.A., Orlando, for Appellant.
Chris A. Draper and Keith E. Broll, of Becker & Poliakoff, P.A., Maitland, for Appellee.
PER CURIAM.
Richard B. Richardson ["Richardson"] timely appeals the trial court's final judgment *1255 in favor of Clifford E. Hooper ["Hooper"]. Specifically, Richardson appeals the order dismissing Richardson's claim against Hooper contained in count one of Richardson's amended third party complaint.
On March 4, 2004, CDL Group, Inc. ["CDL"] sued Richardson, alleging that Richardson violated Florida's interest and usury laws. Richardson's third party complaint describes the underlying events:
4. At all times material hereto, HOOPER was a resident of Orange County, Florida and was a principal and an authorized agent for [CDL].
. . . .
7. [CDL] approached RICHARDSON to enter into a contract to provide a loan for $150,000.00, a copy of said "Loan Request" is attached hereto as Exhibit "A". RICHARDSON was an unsophisticated lender and, as such, the parties agreed that all loan documents would be drafted by WEATHERFORD as [CDL's] attorney. (See attached Exhibit "B"). RICHARDSON relied upon [CDL] and WEATHERFORD to prepare the documents in a legal fashion such that they would be free of unlawful defects.
8. When payments were in default, HOOPER and [CDL] would approach RICHARDSON and tell him that they were unable to pay off the loan as agreed. RICHARDSON was prepared to foreclose on the loan and take over the property that was offered as security for the loan. However, HOOPER and [CDL][i]nduced RICHARDSON to enter into new agreements wherein new loans were entered into to extend the time for repayment of the $150,000.00. These inducements were in the form of offers to pay a "bonus" $10,000.00 as an "incentive" to enter into a new contract.
9. On January 8, 2001, RICHARDSON agreed to not foreclose. Further, RICHARDSON requested that the $10,000.00 be added to the principal.
10. WEATHERFORD[ ] received RICHARDSON's request of January 8, 2001 to add the $10,000.00 to principal. Before WEATHERFORD drafted any modification documents he told HOOPER that the loan modification "might be usurious". WEATHERFORD believed that the $10,000.00 fee and interest charged might render the modification usurious. HOOPER told WEATHERFORD "not to worry" about it, that they weren't "going to sue Richardson anyway".
11. Thus, WEATHERFORD drafted the initial loan modification agreement and coined the term "loan extension fee" to apply to the $10,000.00 payment.
12. RICHARDSON relied upon [CDL] and WEATHERFORD to draft leagally [sic] enforceable documents because [CDL] agreed to draft a "recorded note and mortgage".
13. The loan was in default at least three more times. Each time money was offered by [CDL] to extend the loan and each time WEATHERFORD used the term "loan extension fee" to describe the monies paid in forbearance to foreclosing the loan. On one occasion WEATHERFORD stated that the "loan extension fee" would be added to "principal".
14. At all times material hereto RICHARDSON's intent was to have a legally enforceable loan document to protect his $150,000.00 loan. This intent is set forth in Exhibit "B", attached hereto, wherein the parties agreed that [CDL] would provide and pay for a "recorded note and mortgage".
15. After being in default several times and inducing RICHARDSON to forbear *1256 the foreclosure, [CDL] finally paid off the loan, plus all costs and interest to RICHARDSON. Thereafter, despite assurances to WEATHERFORD to the contrary, [CDL] hired another lawyer to demand all monies be repaid due to usury. (A copy of Attorney Ramsey Dulin's letter dated February 2, 2004 is attached hereto as Exhibit "C".) [CDL] had the intent at all times material hereto to placate RICHARDSON and to avoid a foreclosure knowing that at the end of the loan it intended to sue RICHARDSON for usury. The Receipt of the Dulin letter by RICHARDSON was the first notice he had that the loan modification might be usurious.
16. HOOPER specifically did not mention the word "usury" to RICHARDSON because he knew that RICHARDSON would foreclose if he knew that the loan modification agreement might be usurious.
. . . .
18. HOOPER, individually, and [CDL], together with and through its agent, WEATHERFORD, fraudulently induced RICHARDSON to enter into each new loan. HOOPER and [CDL] represented that the $10,000.00 payment would be a bonus and would be treated as new principal to be applied to the new loan. RICHARDSON relied upon this representation and chose not to foreclose on the loan and entered into the new loan agreement with additional principal added to it.
19. RICHARDSON's reliance was reasonable in that RICHARDSON is an unsophisticated lender and did not know the laws of usury. [CDL] through its attorney, WEATHERFORD, knew the laws of usury and knew that each new loan could be construed as usurious at the end of the loan arrangement with RICHARDSON. Indeed that is what happened. After payment was finally made in full by [CDL], [CDL] took the position that the loans were usurious and demanded repayment of all the loan interest paid by [CDL]. Thereafter, [CDL] filed its complaint seeking an amount double of the amount of interest taken or paid by [CDL].
20. But for the fraudulent representations by HOOPER, [CDL] and its lawyer, WEATHERFORD, RICHARDSON would not have entered into new loan agreements, but, rather would have foreclosed on the initial loan when it was in default and taken over the property to recoup his monies.
21. As a direct and proximate result of the fraud in the inducement by HOOPER and [CDL] and WEATHERFORD, RICHARDSON has been damaged in that [CDL] is seeking repayment of all the interest plus a penalty equal to that amount from the Court and because RICHARDSON lost profits that would have been obtained by a foreclosure.
The trial court dismissed the third party complaint and Richardson elected not to attempt further amendment.
We affirm the trial court's dismissal of Richardson's fraud claim against Hooper. On this record, there is no basis to conclude that Hooper had a duty to disclose that the transactions "might" be usurious. Nor in the circumstances could Richardson have reasonably relied on Hooper's silence to assume the legality of the transaction. We expressly do not decide, however, that the facts are not a defense to CDL's usury claims against Richardson.
AFFIRMED.
GRIFFIN, SAWAYA and EVANDER, JJ., concur.